**NOT FOR PUBLICATION OR CITATION**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 06-CV-148-HRW

BRIAN BACHELDER                                                    PETITIONER

VS:                     **MEMORANDUM OPINION AND ORDER**

BRIAN PATTON, *Warden*                                              RESPONDENT

Brian Bachelder, who is confined in the Federal Correctional Institution in Ashland, Kentucky ("FCI-Ashland"), has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. He has paid the $5.00 filing fee.

This matter is before the Court for screening. 28 U.S.C. §2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

*Pro se* petitions are held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, under 28 U.S.C. §1915(e)(2), the district court can dismiss a case at any time if it determines the action: (i) is frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted.

RESPONDENT

The named respondent is Brian Patton, the warden of FCI-Ashland.

CLAIMS

The petitioner alleges that his due process rights, under the Fifth Amendment of the United States Constitution, were violated when the Bureau of Prisons ("BOP") revoked 40 days of Good Time Credit ("GTC") from his federal sentence. He alleges that the BOP disregarded relevant provisions of 28 C.F.R. §541 *et seq.*, the regulations governing inmate disciplinary proceedings. Specifically, he alleges that: (1) exculpatory evidence was withheld from him prior to and during his hearing; (2) there was no evidence to support the punishment; and (3) the pre-hearing investigation was not conducted in good faith.

RELIEF REQUESTED

The petitioner seeks the reinstatement of the 54 days of vested Good Conduct Time ("GCT") and the 162 days of non-vested GCT which he was ordered to forfeit as a result of the disciplinary proceeding.

ALLEGATIONS OF THE PETITION
1. Disciplinary Charges and Conviction

On January 4, 2006, the petitioner was serving his federal sentence at the Federal Correctional Institution Schuylkill ("FCI-Schuylkill") in Minersville, Pennsylvania. On that date, Senior Correctional Officer T. Barkhurst searched the petitioner's room and discovered a cell phone inside a cooler located on the top bunk bed. He filed an Incident Report in connection with the discovery and charged the petitioner with violation of Code 108 (possession,

2

manufacture, or introduction of a hazardous tool).[1]

A disciplinary hearing was conducted on January 23, 2006. The Disciplinary Hearing Officer ("DHO") determined that the petitioner had possessed a cell phone and had thus violated Code 108. The DHO Report [attached as Exhibit No. 5 to Record No. 1] sets forth several facts upon which the DHO based the Code 108 disciplinary conviction.[2]

First, on October 28, 2005, the warden of FCI-Schuylkill issued a Memorandum explaining that if any inmate was found in possession of a cell phone, he would be charged with a Code 108 violation and sanctioned accordingly. In his Report, the DHO pointed to the warden's October 28, 2005 Memorandum as advance notice to the petitioner that possession of a cell phone was prohibited and would result in the imposition of disciplinary sanctions.

Second, the DHO noted that according to BOP Program Statement 5270.07, it was the responsibility of every inmate to keep his area free of contraband. The DHO did not find convincing either the petitioner's own testimony or the testimony of witnesses he called on his behalf. In the hearing, the petitioner acknowledged that he was responsible for maintaining a

---

[1]

The various levels of Bureau of Prisons ("BOP") offenses are listed in 28 C. F. R. §541.13, Table 3. The most serious offenses ("Greatest Category") are listed in Code Nos.100-199; the next level of offenses ("High Category") are listed in Code Nos. 200- 299; the next level of offenses ("Moderate Category") are listed in Code Nos. 300-399; and the final and lowest level of offenses ("Low Moderate Category") are listed in Code Nos. 400-499.

Under this scheme, a Code 108 offense is defined as: "Tools most likely to be used in an escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade."

[2]

As the Court will discuss *infra*, although the DHO issued an original report finding the petitioner guilty of violations of both Codes 108 and 197, he subsequently amended that report on August 22, 2005, to reflect a violation of only Code 108. The amendment appears to have been prompted by the petitioner's filing of an administrative appeal.

3

contraband-free cell, but denied that he ever bought a cooler. He stated that he had no idea how one got in his cubicle, claiming that Inmate Muhammed owned the cooler. Petitioner testified that he had overheard Inmate Muhammed talking on a cell phone.[3]

The DHO noted that according to the BOP's policy, possessing and introducing a cell phone presents a security concern because it can be utilized to introduce contraband. Because cell phones can bypass the telephone monitoring procedures established in federal prisons, they can be used to further criminal activity and to facilitate an escape without being monitored. Thus, the BOP considers cell phones in the hands of inmates a security hazard

Third, in his findings and conclusions, the DHO found more credible the staff member's Incident Report, which stated that the cell phone contraband had been found in the petitioner's cell. The punishment imposed was: (1) 60 days in disciplinary segregation; (2) forfeiture of 54 days of GCT; (3) forfeiture of 162 days of non-vested GTC; (4) one year's loss of phone privileges; (5) one year's loss of visiting privileges; and (6) recommendation for a disciplinary transfer.[4]

---

[3]

According to the DHO's report, Inmate Muhammed testified on the petitioner's behalf. Inmate Muhammed denied any knowledge of the existence of the cell phone. The petitioner called another witness, Inmate Keys. Keys was somewhat more helpful, testifying that the petitioner did not own an orange cooler and that he did not know who owned the cooler. Keys stated that he asked Muhammed whose cell phone it might be and that Muhammed disclaimed any knowledge.

[4]

The DHO's report lists the following sanction two times: "Comp 010 Law P." Quite frankly, the Court does not know what exactly this means, although one possibility is that it involves the loss of some type of compensation derived from a prison job.

4

## 2.  Administrative Appeals
### A.  Northeast Regional Office Appeal (BP-10 Appeal)

The petitioner filed a BP-10 administrative appeal to the BOP's Northeast Regional Office ("NRO"). One of the arguments which the petitioner advanced in his appeal was that the search of his cell was unlawful.

On April 12, 2006, D. Scott Dodrill, the Regional Director of the NRO, responded to the petitioner's BP-10 appeal.  He affirmed the DHO's Amended Report, stating that there was "some evidence" to support the  amended findings, and that the petitioner's disciplinary record had been modified to reflect the amendment.  Dodrill concluded that:  (1) the DHO's findings were based on the greater weight of the evidence, which he identified as being the reporting officer's statement, and (2) the requisite disciplinary and due process procedures had been substantially followed.

### B.  Central Office Appeal (BP-11 Appeal)

The petitioner appealed White's decision to the BOP's Central Office.  On August 18, 2006, Harrell Watts, the Administrator of Inmate Appeals issued a written denial of the BP-11 appeal and affirmed the NRO.

Watts stated that upon review of the record, the BOP had substantially complied with PS 5270.07, *Inmate Discipline and Special Housing Units*, which requires that if the facts are contradictory or conflicting, the DHO's decision be based upon the greater weight of the evidence.  Watts determined that the Code 108 conviction was appropriate and was based on the greater weight of the evidence.  Watts rejected as meritless the petitioner's claim that the search of his cell was unlawful.  Watts referred to Program Statement 5251.05, *Searches of Housing*

*Units, Inmates, and Inmate Work Areas*, which allows staff to search an inmate's housing and work area, and personal items contained within those areas, without notice to or prior approval from the inmate and without the inmate's presence in order to detect contraband, prevent escapes, maintain sanitary standards and eliminate fire and safety hazards.

Watts further determined that the BOP had substantially complied with the requisite disciplinary procedures and that the proper sanctions had been imposed. He found that there was evidence in the record to support the DHO's findings.

PETITIONER'S ARGUMENTS

1.  Other Inmates' Access and Opportunity to Plant Contraband

The petitioner argues that the weight of the evidence suggested that another inmate at the prison placed the cooler housing the cell phone on his bunk bed, and that the DHO ignored the greater weight of that evidence in concluding that he (petitioner) was responsible for the existence of the contraband cell phone. He contends that there was insufficient evidence to convict him of the Code 108 infraction.

Petitioner submits that other inmates at FCI-Schuylkill had virtually unfettered access to his living quarters at FCI-Schuylkill on the date the cell phone was discovered. He states that the inmate cubicles in FCI-Schuylkill were configured in an open, "dormitory style" manner which enabled other inmates to have unrestricted access to his and all other inmate cubicles. He states that the bunk beds in the cubicles are easily accessible by other inmates passing through the hallway and that there are no doors which would afford any degree of privacy. He states that 150 inmates were able to freely visit among the three floors of the prison. He states that all of

6

these inmates had access to any and all top bunk beds in the prison.

He also notes that although the back stairway (provided for fire escape purposes) was posted as "off limits" to inmates, the stairway in fact remained unlocked and accessible to inmates.  Petitioner contends that the stairway "provides uninhibited and unmonitored access to each floor of the building from any other floor."  [Record No. 2, Petitioner's Memorandum, p. 4]  He argues that based upon this access, another undetected inmate had access to his living quarters and the opportunity to have placed the cooler on his bunk bed.[5]  Based on this possibility, he contends that the DHO erroneously discounted his theory that another inmate in the prison placed the orange cooler, containing the prohibited cell phone, on his bunk bed.

Finally, the petitioner contends that on January 4, 2006, the prison conducted an institution-wide census which required each inmate to be in his cell.  Immediately thereafter, the prison conducted a  massive "shakedown" at 1:30 p.m. and ordered all inmates out of the prison.  Petitioner states that he was one of the first inmates to exit the building and did not bother to take inventory of his personal items because he was certain that he possessed no contraband.  He states that Officer Parkhurst found the orange cooler containing the cell phone on his bunk bed at 2:30 p.m.  He alleges that the one-hour lapse in time provided an opportunity for someone else to place the cooler on his bunk bed.

### 2.  Prison Officials Refused to Provide Pre-Hearing Discovery

Petitioner next contends that he requested various forms of possibly exculpatory evidence

---

[5]

The petitioner does not state upon what fact he concludes that a back stairway of a federal prison camp is not monitored or otherwise under surveillance.

from prison officials prior to his hearing.  This requested information consisted of:  (1) prison records ("cop-outs") from other inmates regarding the actual owner of the phone; (2) a request for a fingerprint test on the phone; (3) a copy of the phone bill of the discovered cell phone which he wanted to compare to his own phone bill; (4) a copy of the record of calls made by him through the ITS; and (5) a copy of his commissary purchases during his confinement.

Petitioner complains that prison officials denied his requests for all of this information. He characterizes the refusal to provide this evidence as a denial of his due process rights in violation of the Fifth Amendment.  He claims that had he been provided with the information, he could have conclusively established that another inmate owned the cell phone at issue. Specifically, he claims that another inmate was convicted of owning a contraband cell phone. He states that this other inmate's conviction was obtained as the result of the prison linking the numbers found on the call log of the cell phone to the exact same phone numbers listed on the prison's Inmate Telephone System (ITS) account for that particular inmate.  He argues that if he were afforded access to the same type of information as to his ITS account, he would have been able to exonerate himself of the disciplinary charge.

### 3.  Hearing Officer Failed to Consider All Evidence

He states that despite his denial of knowledge and ownership of the cooler and the cell phone at the hearing, the DHO erroneously chose not to adopt his version of the events.  He argues that the DHO reached the wrong decision by agreeing with charges contained in the Incident Report.  Petitioner argues that there was insufficient and at best tenuous evidence on which to base the conviction.  To this extent, the petitioner challenges the DHO determinations

as to witness credibility, both his witnesses and the witnesses who testified against him.

In essence, the petitioner challenges what he perceives to be the prison's "strict liability" policy concerning contraband: to wit, that inmates are responsible for ensuring that their quarters remain free of cell phones, and that if a cell phone is found in any inmate's area, he will automatically be sanctioned without regard to the specific facts and circumstances surrounding the discovery. He argued that the policy was unduly harsh to the extent it operated as a deterrent, and that it encouraged inmates to inform on each other.

### 3. Legality of Search

Next, the petitioner argued in his administrative appeals claims that the search of his living quarters was unlawful. The BOP Central Office rejected that argument. Citing BOP Program Statement 5251.05, *Searches of Housing Units, Inmates, and Inmate Work Areas*, the BOP noted that prison officials are allowed to search an inmate's housing and work area, and personal items contained within those areas, without notice to or prior approval from the inmate and without the inmate's presence in order to detect contraband, prevent escapes, maintain sanitary standards, and eliminate fire and safety hazards.

### 4. *Hamilton v. O'Leary* Negates Conviction

Petitioner argues that he was in essence found guilty of only constructive, not actual, possession of the contraband cell phone. As such, he contends that there was insufficient evidence to convict him, and he cites the case of *Hamilton v. O'Leary*, 976 F.2d 341 (7th Cir.1992). In *Hamilton*, the Seventh Circuit held that an inmate constructively possessed weapons found in the cell he shared with three others, but observed in dicta that had the cell been

9

accessible by 32 others, as the inmate argued, the evidence would have been insufficient to support a conviction.

<u>DISCUSSION</u>
1. <u>Proper Forum</u>

Transfer to the federal court in the jurisdiction in Pennsylvania where FCI-Schuylkill is located is not appropriate. Claims which challenge the execution of sentence, such as issues concerning the computation of parole or sentence credits, are properly raised under §2241 in the district where the petitioner is incarcerated. *See Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996); *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir.1991); *DeSimone v. Lacy*, 805 F.2d 321, 323 (8th Cir. 986) (per curiam); *Cohen v. United States*, 593 F.2d 766, 770-71 (6th Cir. 1979); (per curiam); *Wright v. United States Bd. of Parole*, 557 F.2d 74, 77 (6th Cir.1977). As the petitioner is currently incarcerated in the Eastern District of Kentucky, the petitioner has filed his petition in the proper court.

2. <u>Due Process Criteria for Conviction was Satisfied</u>

In essence, the petitioner challenges the sufficiency of the evidence upon which he was convicted in the disciplinary hearing. He argues vehemently that there was overwhelming evidence that another inmate could have deposited the cooler containing the contraband cell phone on his bunk bed, and further contends that the other inmates who testified on his behalf were credible witnesses.

Unfortunately for the petitioner, the law is clear that a DHO need not accept what the inmate perceives to be the "best" or most convincing or persuasive set of facts: according to *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 455-56 (1985), there

10

need only be "some evidence" to support the disciplinary decision.  This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*.

> In *Superintendent v. Hill*, the Supreme Court held that:
>
> [a]ssuming that good time credits constitute a protected liberty interest, the revocation of such credits must be supported by some evidence in order to satisfy the minimum requirements of procedural due process . . . . [a]scertaining whether the 'some evidence' standard is satisfied does not require examination of the entire record, independent assessment of witnesses' credibility, or weighing of the evidence, but, instead, the relevant question is whether there is any evidence in the record to support the disciplinary board's conclusion.

*Id.* at 454-55.

"Some evidence" is a lenient standard; the relevant question is whether any evidence in the record could support the disciplinary board's conclusion.  *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. at 455-56; *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir.2000).  Therefore, a district court has no authority under the guise of due process to review a disciplinary committee's resolution of factual disputes.  *Superintendent*, 472 U.S. at 455.  A review of a decision of a prison disciplinary board does not involve a redetermination of an inmate's innocence or guilt.

A district court merely ensures that a disciplinary decision is not arbitrary and does have evidentiary support.  *Id.* at 457.  The only question is whether the DHO had "some evidence" to ensure fairness and justify his amended findings.  Even meager proof will suffice.  *Webb*, 224 F.3d at 652.

While the facts are not one hundred percent conclusive of whether the petitioner violated Code 108, they are adequate facts upon which to base a prison disciplinary conviction.  They

constitute "some" facts upon which the DHO was entitled to rely in finding the petitioner guilty of violating Code No. 108.  The DHO was not required to accept the petitioner's claim that the others were responsible for the fact that a cell phone was discovered on his bed.[6]  The discovery of contraband in Bachelder's cell is sufficient to support the conviction.  *See also Quintanilla v. O'Brien*, 127 Fed. Appx. 887, 888, 2005 WL 774372 (7th Cir. (Ill.) 2005) (Prison guard's discovery of seven-inch, hand-sharpened shank under federal prisoner's mattress provided some evidence sufficient to comport with due process and to support conviction for possessing dangerous contraband).

To the extent the petitioner is asserting that the testimony the DHO relied upon lacked credibility, independent assessment of witnesses' credibility by a district court is not required. *Id*. at 455.  Federal courts do not assess credibility or weigh the evidence when reviewing a disciplinary conviction.  A DHO's credibility determinations cannot be disturbed on appeal. *Wagner v. Seely, et al.*, 915 F.2d 1575 (7th Cir. 1990) (unpublished), *cert. denied*, 501 U.S. 1219 (1991).  In light of the law of these issues, the Court must reject the petitioner's due process challenge to his disciplinary conviction as lacking merit.

### 3.  No Expectation of Privacy In Cell

The Court must agree in short order with the BOP that the petitioner had no protected

---

6

*See Sarmiento v. Hemingway*, 93 Fed. Appx. 65, 68 (6th Cir. (Mich) March 15, 2004) (not selected for publication in the Federal Reporter) (where the facts were in dispute and the DHO determined that  the greater weight of the evidence supported the finding that inmate Sarmineto committed the prohibited act of  "tampering with a security device" under Code No. 208, the Sixth Circuit affirmed the district court's ruling that the DHO's decision was supported by some evidence, and that Sarmiento's constitutional rights were not violated).

liberty interest in not having his living quarters searched without prior notice.  The United States

Supreme Court rejected such a notion over twenty years ago.  The Court stated as follows:

> . . . [W]e hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.  The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions. . . .

*Hudson v. Palmer,* 468 U.S. 517, 526 (U.S.1984).  The Court further opined:

> The administration of a prison, we have said, is "at best an extraordinarily difficult undertaking."  *Wolff v. McDonnell*, 418 U.S., at 566, 94 S. Ct., at 2979; *Hewitt v. Helms*, 459 U.S. 460, 467, 103 S. Ct. 864, 869, 74 L. Ed.2d 675 (1983).  But it would be literally impossible to accomplish the prison objectives identified above if inmates retained a right of privacy in their cells.  Virtually the only place inmates can conceal weapons, drugs, and other contraband is in their cells.  Unfettered access to these cells by prison officials, thus, is imperative if drugs and contraband are to be ferreted out and sanitary surroundings are to be maintained.

*Hudson v. Palmer* 468 U.S. at 527.

### 4.  *Hamilton* Case Not Controlling

In *Hamilton*, on which the petitioner relies, the Seventh Circuit held that Hamilton

constructively possessed weapons found in a cell which he shared with three others, but noted

in dicta that prisoner Hamilton's cell was accessible by 32 other inmates.  Subsequent cases have

examined the dicta in *Hamilton* when faced with similar arguments by prisoners convicted of

possessing contraband.  One such case was actually a 2005 Seventh Circuit opinion, *Quintanilla*

*v. O'Brien*, 127 Fed. Appx. 887 (7ᵗʰ Cir. (Ill.) March 30, 2005) (Unpublished Order).  There,

prisoner Quintanilla cited *Hamilton* and argued that since he was never seen holding the weapon,

his was a case of constructive possession.  He argued that the odds--that the weapon discovered

was his--were too slim to conclude that its discovery constituted some evidence.  He noted that since his cell door was kept unlocked during the daytime, 240 other inmates had access to his cell, and a one-in-240 probability that the weapon was his is not some evidence.

*Quintanilla*'s facts were somewhat different from the facts of the instant case, because Quintanilla was the sole occupant of a cell with an unlocked door.  However, the Seventh Circuit rejected the notion that an inmate cannot be convicted based on the discovery of contraband in his cell because he shares an equal probability of guilt with each member of the prison's general population.  *Quintanilla*, 127 Fed. Appx. at 889.  The court concluded that requiring prison officials to prove actual possession of contraband would amount to a rule requiring prisons to operate on a permanent lock-down basis.  The court rejected that theory, stating as follows:

> Absent evidence that other prisoners had entered his cell--and Quintanilla provided none--it would be unreasonable to ascribe an equal probability of guilt to the entire prison population.  **Such an assumption would mean that in every prison that does not operate on continuous lockdown, finding drugs or weapons in a prisoner's cell would be insufficient evidence of malfeasance to support a conviction in compliance with the requirements of the Due Process Clause.**  Like the district court, we believe that the discovery of the shank in Quintanilla's cell provides some evidence to support the conviction, and that summary judgment was therefore appropriate.

*Id.*(Emphasis Added).

Another more recent case, *Gordon v. Yost*,  2006 WL 2345944, *4 (W. D. Pa., April 10. 2006) (Only the Westlaw citation is currently available), erodes the application of the dicta in *Hamilton*.  In *Gordon*, the prisoner alleged that contraband weapons discovered in his cell were "plants" and that he should not have been convicted of possession based on the theory of constructive possession.  The district court rejected that argument and the premise that prison

14

officials should be required to prove anything more than "some evidence."

> While it is possible that the weapon was a "plant," it is speculation that an inmate not assigned to the cell concealed a weapon where it would do him little or no good: it is more likely that the weapon in question here was hidden by one of the six inmates, including petitioner, who would have the readiest access to the weapon if needed. There is a difference between the low but real probability that petitioner is guilty, and the pure speculation that could make that probability as low as one would like. If the latter course were adopted, any prison that does not operate on continuous lockdown in single cells would be unable to convict an inmate of possessing contraband. *See Quintanilla v. O'Brien*, 127 Fed. Appx. 887 (7th Cir.2005). A legal rule which produces absurd results is not one which is commanded by the Due Process Clause. Because there was "some evidence" to support the finding petitioner had constructive possession of a weapon, the petition should be denied.

*Gordon*, 2006 WL 2345944 at *4.

The Court agrees with this analysis. Applying *Quintanilla* and *Gordon* to the present case, the Court finds that the petitioner has engaged in speculation in arguing that another inmate left the cooler and the phone on his bed. There was "some evidence" to convict the petitioner of the Code 108 offense and, as noted, although it may not have been 100% conclusive evidence, and although it was subject to dispute by the petitioner at his hearing, it was "some evidence." That is all that long-established case law requires, despite the fact that the penalty imposed here, in the form of the loss of accrued and non vested GCT was most severe.

### 5. Alleged Denial of Exculpatory Discovery

The petitioner's argument that the numerous forms of discovery he sought would have exonerated him suffers from two defects. First, it is speculative. Even if the petitioner's ITS list of approved telephone numbers revealed no match to any number dialed to or from the contraband cell phone found in his area, that would not mean that the petitioner did not *possess*

the cell phone in question.  The case of *Brady v. Maryland*, 373 U.S. 83 (1963) does not compel access to evidence that is not exculpatory.

Second, the petitioner has waived the argument.  The DHO's report, §III (B) ("Summary of Evidence") indicates that the petitioner's Staff Representative was disclosed all documents in reference to the case, and was told that any formal requests for documents must be forwarded to the Central Office.  The DHO report makes no reference to the petitioner's current argument that he was denied access to discovery which would have exonerated him.  Surely, if this had been the case, petitioner's Staff Representative would have made such objection on the record, or, at a minimum, the petitioner would have made his position about being denied access to possible exculpatory evidence part of his testimony at the hearing.

Moreover, the petitioner did not mention in either his March 3, 2006 BP-10 BOP Regional appeal, or in his May 23, 2006 BP-11 Appeal to the Central Office, that he had been denied access to various discovery documents (such as his ITS list compared to call log from the contraband cell phone).  The petitioner raised the claim in his §2241 petition, but the record does not reveal that this claim was previously advanced during the administrative appeal process.

In sum, the Court determines that because the petitioner's disciplinary conviction was supported by "some" evidence as required by *Superintendent v. Hill*, his Fifth Amendment due process rights were not violated.  The petition will be dismissed.

<u>CONCLUSION</u>

Accordingly, **IT IS ORDERED** as follows:

(1)     Petitioner Brian Bachelder's petition for writ of habeas corpus is **DENIED**.

16

(2)     This action will be **DISMISSED**, *sua sponte,* from the docket of the Court, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the respondent.

This January 12, 2007.

**Signed By:**

*Henry R Wilhoit Jr.*

**United States District Judge**